UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,

    Plaintiff,

v.

T<small>OMMIE</small> I<small>RELAND</small>,

    Defendant.
_____/

Case No. 17-20203

S<small>ENIOR</small> U.S. D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

U.S. M<small>AGISTRATE</small> J<small>UDGE</small>
A<small>NTHONY</small> P. P<small>ATTI</small>

**O<small>PINION AND</small> O<small>RDER</small> G<small>RANTING</small> D<small>EFENDANT'S</small> M<small>OTION TO</small> M<small>ODIFY</small> S<small>ENTENCE</small> [26] <small>AND</small> R<small>EDUCING</small> I<small>RELAND'S</small> S<small>ENTENCE TO</small> T<small>IME</small> S<small>ERVED</small>**

Defendant, Tommie Ireland, is serving a five-year sentence for violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1). His is currently incarcerated at a low-security facility at FCI Butner. He is 32-years old and scheduled for release on August 17, 2021. Ireland moves for Early Release under 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 28). The motion has been fully briefed, and a hearing was held on June 23, 2020.

## B<small>ACKGROUND</small>

Ireland was indicted on April 4, 2017 of distribution of a controlled substance (cocaine base) and felon in possession of a firearm. (ECF No. 1). The Magistrate Judge ordered Ireland detained pending trial on April 20, 2017 (ECF No. 10). The Court upheld the detention order at a June 7, 2017 hearing. (ECF No. 19). On August

3, 2017, Ireland pleaded guilty to all six counts of the indictment. On November 30, 2017, the Court sentenced him to five-years in prison. (ECF No. 25).

## ANALYSIS

18 U.S.C. § 3582(c)(1) allows a district court to reduce a prisoner's sentence, once that prisoner has exhausted his administrative remedies, "if extraordinary and compelling reasons" warrant such a reduction. There were some questions about whether Ireland exhausted his administrative remedies with the Bureau of Prisons ("BOP") when he was *pro se*. Once he was appointed counsel, however, he clearly petitioned the warden for early release on June 16, 2020. (ECF No. 32-6). As of July 16, 2020, the BOP has not granted this petition, and so the petition is ripe for judicial decision.[1]

Because Ireland's avenues for relief with the Bureau of Prisons have been exhausted, the Court has three questions to answer. The first is whether extraordinary and compelling reasons warrant a reduction in sentence. The second is whether Porter poses a danger to the community. The third is whether a sentence reduction

---

[1] The Sixth Circuit has sanctioned a district court's decision to deny without prejudice motions for compassionate relief that were filed before the 30-day exhaustion period has run. *United States v. Alam*, ___ F.3d ___, No. 20-1298, 2020 WL 2845694, at *1 (6th Cir. June 2, 2020). Though the Court could deny Ireland's original petition and grant his subsequently-filed petition, such a maneuver would privilege procedural formalism over judicial economy and force a ruling on the question of whether administrative remedies were exhausted by May 26, 2020, a question that is now moot.

is consistent with the § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. Extraordinary and Compelling Reasons for Release

In order to determine if extraordinary and compelling reasons exist to release Ireland, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). There are extraordinary and compelling reasons for modification where "[t]he defendant is ... suffering from a serious physical or medical condition ... that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *United States v. Rahim*, No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020) (quoting U.S.S.G. § 1B1.13 comment n.1(A)(ii)).

The statute also calls for release for "other reasons" that create extraordinary and compelling reasons for release in combination with a petitioner's medical reasons. The heightened susceptibility of prison populations to the virus is an additional reason under the Sentencing Commission's Guidelines for the release of medically vulnerable inmates. *Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020) (citing U.S.S.G. § 1B1.13 comment n.1(D)). "On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present[ ] unique challenges

for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020), *reconsideration denied*, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The pandemic has swept through Butner Low FCI. The facility has 418 inmates, including Ireland, and 1 staff member positive for COVID-19. See Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/ accessed on July 16, 2020. 16 inmates and 1 staff member have died, and 244 inmates and 14 staff members have recovered. *Id*. 1,114 tests have been administered to 1,109 inmates—632 have been positive. *Id*.

Against this backdrop, Ireland has presented evidence that his medical conditions put him at greater risk of COVID-19.

Ireland argues that he suffers from two health-related risk factors of COVID-19. The first is his latent Tuberculosis. (ECF No. 31-1, PageId.141). Tuberculosis, or "TB" is a bacterial infection caused by *Mycobacterium tuberculosis*. Those with latent TB are infected with *M. tuberculosis*, but they do not have the TB disease, and consequently demonstrate no symptoms and are not contagious. *See* Centers for Disease Control and Prevention, "The Difference Between Latent TB Infection and TB Disease," https://bit.ly/2Vha7EJ, last accessed on July 14, 2020. Those with a TB infection and an immunocompromising condition such as HIV, malnutrition, or

diabetes, are more likely to suffer from active TB. *See* World Health Organization, Tuberculosis, https://www.who.int/news-room/fact-sheets/detail/tuberculosis, last accessed on July 14, 2020.

Because COVID-19 also targets the lungs, latent TB is a particularly dangerous disease to have at FCI Butner Low. According to a non-governmental organization that specializes in addressing tuberculosis worldwide, those who recovered from tuberculosis may be at a greater risk of COVID-19. *See* The Union, COVID-19 and lung health: Frequently Asked Questions, https://www.theunion.org/news-centre/covid-19/covid-tb-faqs, last accessed July 16,2020. "COVID-19 affects the lungs, and as we know that there is usually some left-over damage in the lungs following TB disease, which may put you at increased risk of developing more severe COVID-19 symptoms." *Id*.

That being said, COVID-19's comorbidity with tuberculosis, latent or active, is far from understood. A district court in California summarized the findings of a recent study as follows.

> One observational study studied the relationship of tuberculosis and COVID-19 in 36 confirmed COVID-19 patients. It found that "individuals with latent or active TB [Tuberculosis] may be more susceptible to SARS-CoV-2 infection." It also found that "COVID-19 disease progression may be more rapid and severe" in those with latent or active tuberculosis.[51] It identified "tuberculosis history (both of active TB and latent TB) [as] an important risk factor for SARS-CoV-2 infection." The study noted that its findings are limited because it is based on a low number of cases.

*Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667, at *5 (N.D. Cal. Apr. 12, 2020).

The study cited is a preprint and has yet to be peer-reviewed.[2] *See* Yongyu Liu, Lijun Bi, Yu Chen, Yaguo Wang, Joy Fleming, Yanhong Yu, Ye Gu, Chang Liu, Lichao Fan, Xiaodan Wang, Moxin Cheng, *Active or latent tuberculosis increases susceptibility to COVID-19 and disease severity*; https://www.medrxiv.org/content/10.1101/2020.03.10.20033795v1, last accessed on July 14, 2020.

A district court in this district recently granted early release to an inmate suffering from latent TB.

> [R]egardless of whether latent TB can make a person more susceptible to catching COVID-19, if [petitioner] does catch it, the risks to someone with a co-infection of TB and COVID-19 "are readily apparent," as both are respiratory diseases that affect the lungs. The Court is not willing to take that risk.

*United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *5 (E.D. Mich. Apr. 20, 2020) (citing Max Bearak and Joanna Slater, "Among the most vulnerable to coronavirus: The tens of millions who carry HIV and tuberculosis," *Washington Post*, https://wapo.st/2xBSNB5).

As a district court in Texas found, latent tuberculosis "'substantially diminishes' [an inmate's] ability 'to provide self-care'—remaining free of the most

---

[2] *See* The Economist, Speeding up Science During the Pandemic, May 9, 2020, https://www.economist.com/leaders/2020/05/09/speeding-up-science-during-the-pandemic (explaining the role of preprints to the rapid pace of COVID-19 research, and the advantages and disadvantages of relying on preprints).

severe COVID-19 symptoms—'within the environment of a correctional facility.'" *United States v. Johnson*, No. CR H-96-176, 2020 WL 3618682, at *3 (S.D. Tex. July 2, 2020). A district court in Nebraska ordered early release primarily on the grounds of the petitioner's hypertension but also because of her latent TB diagnosis. *United States v. Burke*, No. 4:17-CR-3089, 2020 WL 3000330, at *2 (D. Neb. June 4, 2020) ("Research has yet to conclusively establish the risks associated with either latent tuberculosis or brain injury, but the known pulmonary comorbidities and symptoms of COVID-19 and increasing evidence of vascular complications make those conditions relevant as well."). Latent TB, along with hypertension, obesity and a history of smoking, has also been grounds for release from immigration detention. *Singh v. Barr*, No. 20-CV-02346-VKD, 2020 WL 1929366, at *10 (N.D. Cal. Apr. 20, 2020); *see also Thierry B. v. Decker*, No. CV 20-4035(MCA), 2020 WL 3074006, at *17 (D.N.J. June 10, 2020) (denying habeas relief but "acknowledg[ing] Petitioner's vulnerabilities to complications from COVID-19 in light of his latent T.B., severe psoriasis, and anxiety.") Most recently, this Court has found that latent TB justified the release of a similarly-aged inmate from a facility with far fewer confirmed cases than Butner Low FCI. *United States v. Watkins*, Case No. 15-20333, ECF No. 84 (E.D. Mich. July 16, 2020).

District courts have not all found that latent TB is cause for early release. *United States v. Rodriguez*, No. CR 17-618, 2020 WL 3447777, at *4 (E.D. Penn.

June 24, 2020); *United States v. Sattar*, No. 02-CR-395, 2020 WL 3264163, at *3 (S.D.N.Y. June 17, 2020). Given the scientific community's uncertain and evolving understanding of the interplay between COVID-19 and other pulmonary illnesses, the Court will follow the example of *Doe, Atwi*, *Johnson*, and *Watkins*, and to a lesser extent *Thierry B*, *Burke* and *Singh*, instead of that of *Rodriguez* and *Sattar*.

Ireland's second health problem is his obesity. Ireland's Body Mass Index ("BMI") is 30.6. The CDC has recognized that people of any age with a body-mass index of greater than 30 "are at increased risk of severe illness from COVID-19." Centers for Disease Control and Prevention, People with Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last accessed on July 15, 2020. Individuals under 60 with a BMI between 30 and 34, are twice as likely to need acute medical care related to COVID-19, and 1.8 times more likely to need care in an Intensive Care Unit, than those with a BMI less than 30. Jennifer Lighter, et al., Obesity in Patients Younger Than 60 Years Is a Risk Factor for COVID-19 Hospital Admission, Clinical Infectious Diseases (2020), https://academic.oup.com/cid/article/doi/10.1093/cid/ciaa415/5818333, last accessed July 15, 2020.

Finally, the fact that Ireland has already tested positive for COVID-19 does not militate against his release. The Government cites a case from this district in

which evidence that an individual has recovered from COVID-19 precludes him from release. *United States v. Bland*, Case No. 18-20555, (E.D. Mich. May 28, 2020). That court found that "[i]t is not yet clear whether an individual can contract COVID-19 a second time, but according to the Center for Disease Control, reinfection of similar type viruses is unlikely." *Id*. at 3. The CDC website currently advises as follows,

> The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood. Patients with MERS-CoV are unlikely to be re-infected shortly after they recover, but it is not yet known whether similar immune protection will be observed for patients with COVID-19.

Centers for Disease Control and Prevention, Clinical Questions about COVID-19: Questions and Answers, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html, last accessed on July 15, 2020.

The Government argues that Ireland's positive test results make him a danger to the community. This danger can be managed by a mandatory at-home quarantine period, however. Further, recuperating from the virus at home can be substantially healthier than recuperating in prison. *See United States v. Parramore*, No. CR18-156-RSM, 2020 WL 3051300, at *5 (W.D. Wash. June 8, 2020); *United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, 2020 WL 2535049, at *3 (S.D. Cal. May 15, 2020) ("Returning home to her family to quarantine is safer for the community than is keeping Ms. Arreola-Bretado confined at Otay Mesa where she will likely be a risk to other inmates and staff who have not yet contracted COVID-19."). Ireland will be required to quarantine himself at home for 14-days following

his release to address the risk that he could spread the virus. Home quarantine is both safer and more rigorous than quarantine in prison, where social distancing is structurally impossible.

The Court will not force Ireland to recuperate in a facility where he would continually be exposed to COVID-19. The Government has presented no clinical grounds for it to conclude that an individual cannot contract the coronavirus twice. *Snell v. United States*, No. CR 16-20222-6, 2020 WL 2850038, at *3 (E.D. Mich. June 2, 2020) (citing William Park, *Can you catch Covid-19 twice?*, BBC (Apr. 22, 2020), https://www.bbc.com/future/article/20200421-will-we-ever-be-immune-to-covid-19 ("Immunity to Covid-19 is not as clear cut as we might hope")).

2. Danger to the Community

The Sentencing Commission's Guidelines require that an individual granted early release under 18 U.S.C. § 3582 "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. 1B1.13.

Ireland was transferred from a medium security to a low security prison in April 2019. He received two disciplinary infractions, one for disobeying orders to return to his cell and another for letting another inmate use his phone credit.

Distributing weapons and narcotics is inherently dangerous, even if Ireland has not himself been convicted of a crime of violence. That being said, he has argued persuasively that he has reformed his ways. Though still young, he seems to have

matured beyond the point of criminality. As explained further at the June 23, 2020 hearing, The Court has no further grounds to assume that he is dangerous.

3. Section 3553(a) Factors

A district court contemplating a motion for compassionate release must consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these factors is explicated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the June 23, 2020 hearing.

Ireland makes much of the fact that although his guidelines were well in excess of ten years at the time of his sentencing, were he to be sentenced today his guidelines range would only be 51 to 63 months. Specifically, he argues that because

two of his prior convictions were for attempts, he would no longer be considered a career offender under today's Sixth Circuit precedent. *See United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019). Finding ample reasons to depart from the guidelines such as they were in 2017, however, the Court will not recalculate his guidelines.

The sale of narcotics and firearms are grievous crimes. Neither the violation of 21 U.S.C. § 841(a)(1) nor that of 18 U.S.C. § 922(g)(1) precludes early release under § 3582, however, where extraordinary and compelling reasons exist, and where the other sentencing factors support a reduced sentence. *See United States v. Millage*, No. 3:13-CR-234-SI, 2020 WL 2857165, at *4 (D. Or. June 2, 2020), *appeal dismissed*, 810 F. App'x 572 (9th Cir. 2020) (releasing a Defendant convicted of being a felon in possession of a firearm, in violation of § 922(g)); *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *1 (D. Md. May 21, 2020) (releasing a Defendant who was convicted of using a firearm in furtherance of a drug trafficking crime); *United States v. Bess*, No. 16-CR-156, 2020 WL 1940809, at *10 (W.D.N.Y. Apr. 22, 2020) (releasing a Defendant who had violated § 841(a)(1)); *United States v. Hansen*, No. 07-CR-00520(KAM), 2020 WL 1703672, at *1 (E.D.N.Y. Apr. 8, 2020) (releasing a Defendant convicted of six counts of heroin and cocaine distribution); *Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (releasing a Defendant who was convicted of "drug

distribution and unlawful firearm possession, and is one year away from becoming eligible for home confinement").

Ireland's demonstrable maturity and development in prison provides sufficient grounds to reduce his sentence to time-served, even given the seriousness of his offense. Ireland has made significant progress in prison. He has taken over 200 hours of programming and received good work marks on his progress report. He works in textiles, manufacturing military uniforms, and, since the pandemic, masks. He has earned a certificate in forklift operations and become licensed in "NCCER" (National Center for Construction Education and Research), a construction certification that requires a 102 hour course. Ireland completed a 12-hour drug program and paid his $600.00 to the Court. (ECF Nos. 32-2, 32-4). There does not appear to be any prospective benefit for Ireland to keeping him incarcerated until he would be eligible for home confinement on February 17, 2021. (ECF No. 32-5, PageId.185).

Ireland's plan for reentry is also sound. Ireland has a good relationship with his sister, Ashley Ireland, who will provide a home for him upon his release. Ms. Ireland has the help of a local pastor, Mikiah Keener to help put together a reentry plan for Ireland. Ms. Keener wrote a letter to the Court explaining Ireland has "has a loving family and support system who is eager to help and encourage him to stay on the right path." (ECF No. 32-3, PageId.182).

Ireland is no longer a threat to society, and whatever deterrence value his sentence carried has already accrued in full. There is no legitimate penological justification for keeping him incarcerated any longer. Justice would not be served by insisting that Ireland remain in prison until he is eligible for home confinement in seven months. "When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic.'" *United States v. Hunt*, No. 18-20037, 2020 WL 2395222, at \*6 (E.D. Mich. May 12, 2020) (citing *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at \*12 (E.D. Pa. Apr. 1, 2020)).

## CONCLUSION

Accordingly, for the reasons articulated in this order and on the record at the June 23, 2020 hearing,

**IT IS ORDERED** that Ireland's Motion for Early Release [26] is **GRANTED**. His sentence is reduced to time-served.

**IT IS FURTHER ORDERED** that Ireland be **IMMEDIATELY RELEASED** from custody. He must, however, remain in home confinement for his first 14-days out of custody.

**IT IS FURTHER ORDERED** that upon his release from custody, Ireland will begin his 6-year term of **SUPERVISED RELEASE**, as outlined by the

December 5, 2017 Judgment (ECF No. 25). Ireland's Conditions of Supervised Release are **MODIFIED** only to provide that he shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.

**SO ORDERED**.

|  |  |
|---|---|
| Dated: July 20, 2020 | s/Arthur J. Tarnow<br>Arthur J. Tarnow<br>Senior United States District Judge |